| **Hernandez v Syed** |
|:---:|
| 2025 NY Slip Op 30562(U) |
| February 19, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 523290/2020 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
ANA HERNANDEZ and JUSTINO HERNANDEZ,

      Plaintiffs,

  -against-

RADHA SYED, M.D., GARDEN OF HEALTH a/k/a EL JARDIN DE LA SALUD, RICHMOND OB/GYN ASSOCIATES, P.C., ALEX MATTHEW AMBERG, M.D., DANIELLE LEVY, M.D., RITHA BELIZAIRE, M.D., PHILIP KRAMER, M.D. and THE BROOKLYN HOSPITAL CENTER,

      Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 523290/2020
Mo. Seq. 3 & 4

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

NYSCEF #s: Seq. 3: 113 – 121, 141 – 148, 157, 159

        Seq. 4: 122 – 138, 149 – 156, 158, 160 – 161

Defendants Radha Syed, M.D. ("Dr. Syed") and Richmond Ob/Gyn Associates, P.C.[1] ("Richmond Ob/Gyn Associates") move (Seq. No. 3) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiffs' Complaint against them, or granting partial summary judgment as to any causes of action, parties, or theories that should be dismissed as a matter of law.

Defendants Alex Matthew Amberg, M.D. ("Dr. Amberg"), Danielle Levy, M.D. ("Dr. Levy"), Ritha Belizaire, M.D. ("Dr. Belizaire"), Philip Kramer, M.D. ("Dr. Kramer"), and The Brooklyn Hospital Center ("Brooklyn Hospital Center" or "the hospital") separately move (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor.

Plaintiffs oppose these motions only as to Dr. Syed, Richmond Ob/Gyn Associates, Dr. Belizaire, and the vicarious liability of Brooklyn Hospital Center on behalf of Dr. Belizaire.

---

[1] It is not disputed that Dr. Syed was an employee and president of Richmond Ob/Gyn Associates at the time of the events at issue. They move jointly for summary judgment as an individual and corporate practice.

1

[* 1]

Plaintiffs do not oppose the summary judgment motions as to Dr. Amberg, Dr. Levy, or Dr. Kramer. Accordingly, summary judgment is **granted** to Dr. Amberg, Dr. Levy, and Dr. Kramer without opposition.

Plaintiffs commenced this action on November 23, 2020, asserting claims of medical malpractice in connection to a laparotomy and bilateral salpingo-oophorectomy performed on Ana Hernandez ("the patient") on July 22, 2019. Co-plaintiff Justino Hernandez also asserted claims for loss of services.

Prior to the events at issue, the patient had a history of breast cancer and had undergone a hysterectomy in 1998, which resulted in bowel perforation, colostomy, and additional surgeries.

The 62-year-old patient visited Dr. Syed, an employee of Richmond Ob/Gyn Associates, on April 9, 2019 with complaints of right lower quadrant pain over the previous year. Dr. Syed reviewed the patient's recent abdominal and pelvic CT scan from March 26, 2019, which revealed large bilateral cystic lesions and large ventral hernia (a bulge of abdominal tissue). An ultrasound in Dr. Syed's office confirmed cystic masses in the adnexa region of the ovaries and fallopian tubes. Dr. Syed ordered tumor marker tests, which returned negative.

Dr. Syed saw the patient for a follow-up on April 24, 2019 and recommended performing a bilateral salpingo-oophorectomy (removal of both ovaries and fallopian tubes) due to her cystic masses and history of cancer. Dr. Syed ordered a pelvic MRI which was performed on May 6, 2019 and confirmed the large bilateral ovarian cysts and ventral hernia. On May 21, 2019, Dr. Syed referred the patient to Dr. Belizaire, a general surgeon at Brooklyn Hospital Center, to potentially assist in gaining access to the abdomen for the bilateral salpingo-oophorectomy, repairing the ventral hernia, and lysing adhesions from her prior surgeries.

Dr. Belizaire evaluated the patient on June 12, 2019 and June 25, 2019. She recommended and scheduled a ventral incisional hernia repair with lysis of adhesions, which would be performed together with the bilateral salpingo-oophorectomy. Each doctor was the primary surgeon on their portion of the procedure.

On July 22, 2019, the patient underwent the surgery at Brooklyn Hospital Center. Dr. Belizaire performed the exploratory laparotomy and lysis of adhesions for approximately two and a half hours before encountering the pelvis. She identified and excised a cyst near the left ovary, which was adhered to the pelvic

2

side wall. Dr. Syed then took over and performed her part of the procedure, removing the left and right ovary and left and right fallopian tubes. Dr. Belizaire returned to apply a mesh to the ventral hernia and close the abdomen. The patient was transferred to the post-anesthesia care unit.

The patient exhibited post-operative symptoms including tachycardia, hypertension, elevated Creatinine levels, and elevated white blood cell count. On July 23, 2019, she was transferred to the surgical ICU. A renal sonogram showed her left ureter was emptying urine into the abdomen, and further tests revealed the left distal ureter was transected. On July 24, 2019, the patient underwent emergent surgery to repair the ureter and drain 1.5 liters of fluid from the abdomen. She remained hospitalized until August 2019, when she was discharged to New York Congregational Nursing Center. She continued to experience ureteral complications and was later diagnosed with a left ureter stricture in 2022.

Plaintiffs allege that the moving defendants departed from the standard of care in their performance of the July 22, 2019 bilateral salpingo-oophorectomy and lysis of adhesions. Specifically, Plaintiffs allege that Dr. Syed negligently recommended and performed a procedure that was not indicated for the patient, failed to identify and protect the left ureter during the surgery, failed to place ureteral stents, failed to consult a urologist, and failed to rule out ureteral injury intraoperatively. Plaintiffs allege that Dr. Belizaire also failed to visualize and protect the ureter during her part of the surgery. Plaintiffs allege that these departures were a proximate cause of the patient's transected left ureter and subsequent injuries.

In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure. Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig v Hadpawat,* 229 AD3d 650, 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or

[* 3]

unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023]).

In support of Dr. Syed and Richmond Ob/Gyn Associates' motion, the movants submit an expert affirmation from Gary Mucciolo, M.D. ("Dr. Mucciolo"), a licensed physician board certified in obstetrics and gynecology. Dr. Mucciolo has laid a proper foundation to opine on the issues of this case. In addition to establishing that he is board certified in Dr. Syed's field, he affirms he has experience performing bilateral salpingo-oophorectomies and managing ovarian cysts and abdominal pain.

Dr. Mucciolo offers his expert opinion that Dr. Syed acted in accordance with the standard of care at all times in treating the patient. From the first date of treatment on April 9, 2029, Dr. Mucciolo opines that Dr. Syed properly assessed the patient and ordered appropriate MRIs and other tests. Based on the patient's complaints of ongoing and severe abdominal pain, the CT scan and MRI images revealing bilateral ovarian cysts, and her history of breast cancer, Dr. Mucciolo opines that Dr. Syed appropriately recommended a bilateral salpingo-oophorectomy, which would relieve her symptoms and reduce her cancer risk.

Dr. Mucciolo also opines that it was within the standard of care for Dr. Syed to consult with Dr. Belizaire to perform the procedure as an open laparotomy and cut away any adhesions obstructing the ob/gyn surgical site. He opines that the patient's prior surgeries were not a contraindication to performing the procedure in this manner.

During Dr. Syed's portion of the procedure (the removal of the ovaries and fallopian tubes), Dr. Mucciolo opines that there were no departures with respect to protecting the ureter or detecting an intraoperative injury. Dr. Mucciolo addresses the claim that Dr. Syed failed to place ureteral stents or consult a urologist before or during the surgery. He states this was not the required standard of care, because Dr. Syed identified the ureters by sight and there were no expected ureteral abnormalities on the patient's radiological images. Some oozing in the abdominal cavity was mentioned in Dr. Syed's operative report, but Dr. Mucciolo notes that there was no evidence that it originated from the left ureter. Dr. Mucciolo also states that methylene blue – a dye which can detect injury to the ureter – was administered "to rule out an intraoperative injury." Dr. Mucciolo opines that further testing such as a pyelogram would only be required by the standard of care if a ureteral injury was suspected, and here

4

[* 4]

there was no evidence of one.

Dr. Mucciolo notes that Dr. Syed had no further role in diagnosing or treating the patient after she completed the bilateral salpingo-oophorectomy, and the patient was admitted to the post-operative surgical unit thereafter.

Finally, Dr. Mucciolo opines that no departures from the standard of care on Dr. Syed's part were a proximate cause of the patient's injuries. He concedes that "the precise mechanism of the left ureter injury is not clear," but this type of injury was a "known and accepted" risk and complication of removing the ovaries and fallopian tubes, particularly because this patient had multiple prior surgeries and required extensive lysis of adhesions for over two hours.

Dr. Syed and Richmond Ob/Gyn Associates have established prima facie entitlement to summary judgment in their favor, based on their expert's opinion that Dr. Syed did not depart from the standard of care in recommending and performing the bilateral salpingo-oophorectomy portion of the July 22, 2019 surgery. He also opines it was not required by the standard of care in these circumstances to apply ureteral stents, consult a urologist, or do further intraoperative testing to detect a ureter injury. Finally, the expert submission establishes prima facie that the patient's transected ureter was a risk and complication of this type of surgery, not proximately caused by error or negligence on Dr. Syed's part. The burden therefore shifts to Plaintiffs to raise a triable issue of fact.

In opposition to Dr. Syed and Richmond Ob/Gyn Associates' motion, Plaintiffs submit an expert affirmation from a licensed physician (name of expert redacted), board certified in obstetrics and gynecology. The Court finds that Plaintiffs' expert has laid a proper foundation of their education and experience to opine on the issues of this case, affirming that they have experience in performing bilateral salpingo-oophorectomy and they are familiar with diagnosis and treatment of intraoperative ureter injuries.

Plaintiffs' expert opines that Dr. Syed departed from the standard of care in her treatment of the patient before and during the July 22, 2019 procedure. Firstly, the expert opines that the patient was not a proper candidate for a bilateral salpingo-oophorectomy on July 22, 2019, countering the opinion of Dr. Mucciolo that the surgery

5

[* 5]

was appropriately recommended. Based on her CT scans and MRI, Plaintiffs' expert opines that the patient had peritoneal cysts, negative for tumor markers, and such cysts did not urgently require surgical intervention or full removal of the ovaries and fallopian tubes. Given the patient's extensive surgical history and the expectation of many adhesions and scar tissue in the abdomen, Plaintiffs' expert opines that "the risk of organ injury far outweighed any expected benefit of attempted cyst removal." Therefore, the expert opines Dr. Syed departed from the standard of care by recommending and performing this procedure.

The expert also opines that due to the patient's surgical history including a hysterectomy, bowel perforation, colostomy, and colostomy reversal, "dense adhesions and distorted anatomy were highly probable and foreseeable," and the standard of care required Dr. Syed to place ureteral stents to visualize and avoid injury to the ureters. The expert counters the movants' expert that Dr. Syed adequately visualized and identified the left ureter during the procedure. The expert notes that Dr. Syed's operative report and testimony indicated she did not fully visualize the left ureter, stating that this ureter "'seemed' to enter the vaginal vault and was 'most likely' entering the left side of the bladder." The expert opines that a more complete visualization was necessary for a patient undergoing a bilateral salpingo-oophorectomy with extensive adhesions and distorted anatomy from prior surgeries, as these factors increase the risk of injuring the surrounding anatomy, including ureters. Therefore, Plaintiffs' expert opines that it was a deviation from the standard of care not to place ureteral stents to better visualize and identify their location and avoid injury.

Further, the expert opines that it was the standard of care for Dr. Syed to request a urology consult in the operating room, as this specialist would be more equipped to identify and prevent such injury while working so closely to the ureters. The expert notes that the fallopian tube and ovary are very close to the organ that was transected ("directly in front of the ureter, anatomically") and opines that Dr. Syed departed from the standard of care by not taking the precaution of ureteral stents and/or urology consult to visualize, identify, and protect them.

Additionally, Plaintiffs' expert opines that Dr. Syed departed from the standard of care by failing to order or perform an intraoperative cystoscopy to confirm there had been no injury to the left ureter "given that her visualization was limited" and she did not fully identify and trace the left ureter. The expert opines that the use of

6

[* 6]

methylene blue did not rule out intraoperative injury, as urine emptying into the abdomen may be delayed or can leak into a pocket of adhesions and not be visible.

Plaintiffs' expert opines that all these alleged departures proximately caused or substantially contributed to the patient's left ureter sustaining an intraoperative injury. The expert notes that it was the "distal portion of the left ureter" deep in the pelvis that was transected, and this is the portion of the ureter that was "not visualized, inspected, or investigated by Dr. Syed." The expert counters Dr. Mucciolo's opinion that a ureter injury is a known and recognized risk of this type of surgery and therefore did not occur due to malpractice. Plaintiffs' expert opines that transecting the left ureter in this manner is not an accepted risk and it would only be caused by the ob/gyn and surgeon's failure "to properly identify, visualize, and protect the left ureter intraoperatively."

Based on these submissions, Plaintiffs' expert has raised issues of fact sufficient to defeat Dr. Syed and Richmond Ob/Gyn Associates' summary judgment motion. The expert offers a detailed counter-opinion as to Dr. Syed's alleged departures from the standard of care, including the performance of a contraindicated procedure, failure to protect the left ureter, and failure to rule out the injury intraoperatively.

In reply, the movants argue that the claim the procedure was "contraindicated and should not have been performed" is a new theory of liability that was not alleged in the bill of particulars. However, Plaintiffs' bill of particulars against Dr. Syed did allege "negligently and improperly recommending surgery," and Dr. Mucciolo addressed "Plaintiffs' claim that the July 22, 2019 bilateral salpingo-oophorectomy was contraindicated" directly in the moving papers. This was not a theory raised for the first time in opposition, but a direct response and counter-opinion to a statement from the movants' expert.

Plaintiffs' ob/gyn expert also sufficiently raises issues of fact as to proximate causation, opining that transection of the left ureter is not a known and accepted complication, but one that was caused and worsened by the alleged failure to avoid and detect such injury during the procedure. "When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution" (*Stewart v. N. Shore Univ. Hosp. at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022], citing *Russell v. Garafalo,* 189 A.D.3d 1100, 1102 [2d Dept. 2020]). Here, the issues of fact raised by the experts' conflicting opinions must be resolved by a jury and not as a matter of law.

7

[* 7]

Notwithstanding, Plaintiffs do not oppose the part of the motion seeking summary judgment on the informed consent claim. Accordingly, Dr. Syed and Richmond Ob/Gyn Associates' motion for summary judgment is granted as to the informed consent cause of action only, and the motion is otherwise denied.

Turning to the motion for summary judgment in favor of Dr. Belizaire and Brooklyn Hospital Center, the movants submit an expert affirmation from Craig J. Collins, M.D. ("Dr. Collins"), a licensed physician board certified in general surgery and colon and rectal surgery. Dr. Collins has laid a proper foundation to opine on the issues herein, stating his familiarity with hernia repair, lysing adhesions, consulting with ob/gyn physicians, and gaining access to the surgical site in this type of procedure.

Dr. Collins opines that Dr. Belizaire complied with the standard of surgical care before and during her portion of the July 22, 2019 procedure. He opines that Dr. Belizaire appropriately evaluated the patient through a physical examination, medical history, and pre-operative labs, and that there was no contraindication for the patient to undergo this surgery. Due to the patient's multiple prior abdominal surgeries, the expert opines that it was within he standard of care to perform an open procedure for a "better view of the anatomy intraoperatively and safer capability of lysing the expected adhesions."

Dr. Collins opines in detail that Dr. Belizaire's portion of the procedure, specifically lysing adhesions and closing the ventral hernia with a surgical mesh, was performed in compliance with the standard of care. He notes that the fact Dr. Syed was able to access the area without encountering adhesions is evidence that they were properly addressed by Dr. Belizaire.

Significantly, Dr. Collins opines that the ureters are in a different anatomical region from the lysis of abdominal adhesions and ventral hernia repair performed by Dr. Belizaire. The expert states that the ureters are located in the retroperitoneum space, the peritoneum being a membrane lining the abdominal organs. He opines that the standard of care did not require Dr. Belizaire to consider placement of ureteral stents for her portion of the procedure, which involved the abdominal cavity and not the ovary, fallopian tube, and distal ureter region. The expert also opines that it was outside the scope of Dr. Belizaire's role to order an intraoperative urology consult, cystoscopy, or retrograde pyelogram, and there was "no reason for her to have requested or performed

8

these procedures" since there was no evidence of ureteral injury while she was operating.

The expert opines that Dr. Belizaire did not depart from the standard of care by not "inspecting" the ureters during the ventral hernia repair or closure of the abdomen, because this again would require going into a space where she was not operating, and she "never invaded the retroperitoneal or extraperitoneal space where the ureters lie" during her portion of the procedure. The expert opines that Dr. Belizaire appropriately "relied on Dr. Syed to assess her surgical field for any potential intraoperative pelvic complications prior to requesting Dr. Belizaire return to the operating room to proceed with closure of the abdomen."

Dr. Collins opines that following the procedure, Dr. Belizaire "closely monitored" the patient in accordance with the standard of care. Serial blood tests were taken which revealed her rising creatinine levels, which Dr. Collins opines is the standard of care for detecting a ureteral injury post-operatively. Dr. Collins opines that Dr. Belizaire appropriately responded to this symptom and consulted with urology to timely diagnose and treat the patient's ureteral complication.

On the issue of proximate causation, Dr. Collins opines that no alleged departures from the standard of care by Dr. Belizaire could have caused the patient's injuries. Again, Dr. Collins opines that the abdomen and pelvis are "anatomically distinct cavities," and that the portion of the procedure performed by Dr. Belizaire simply could not have resulted in the patient's distal ureter being transected. Dr. Collins states that the transection of the patient's left ureter was "in the deep pelvis at the very distal portion of the ureter where it terminates in the bladder," which he opines is not located "anywhere near, in anatomic terms, the abdominal cavity where Dr. Belizaire was tasked with lysing adhesions." The expert addresses the testimony of Dr. Syed, who stated that she observed Dr. Belizaire mobilize the patient's colon in the retroperitoneum. Dr. Collins opines that from a surgical standpoint, it is possible to mobilize the colon without entering the retroperitoneum, and in the case of this surgery, he assumes this was the case because "a surgeon should seek to limit the scope of their surgery as much as possible to achieve the goal of accessing the surgical site." He opines that Dr. Belizaire worked from the lower abdomen to the top of the pelvis ("pelvic brim") and never entered the retroperitoneum area where the ureters lie, and therefore she could not have proximately caused injury to the ureter.

9

Additionally, Dr. Collins notes that methylene blue was administered to the patient at approximately 11:58 a.m., after Dr. Belizaire's lysis of adhesions was completed. Dr. Collins opines that the absence of extravasation (leakage) of the dye confirms "the integrity of the left ureter was intact" during Dr. Belizaire's part of the procedure, despite also conceding that methylene blue "cannot definitively rule out an intraoperative injury."

Dr. Collins opines that ureteral injury is a known complication of removal of the fallopian tubes – Dr. Syed's portion of the surgery – which can occur in the absence of malpractice. As an example, he notes that the ureter may be "damaged thermally by instruments" or "experience a disruption of blood flow," and this type of injury may not be detectable until hours or days after the operation. Thus, he opines that the ureter injury was not proximately caused by any departure from the standard of care of Dr. Belizaire, nor by the alleged failure to detect the injury intraoperatively, because it would not necessarily have been identified or ruled out during the surgery.

Based on these submissions, the Court finds that Dr. Belizaire's expert opinions are insufficient to establish prima facie entitlement to summary judgment. Specifically, Dr. Collins presents an argument that Dr. Belizaire never encountered the distal ureters during her portion of the surgery – and therefore had no obligation to identify, protect, or detect intraoperative injury. However, this opinion is often speculative and does not address the conflicting evidence in the record. The expert relies on the records and testimony of Dr. Belizaire, but there are discrepancies between her impression of the operative field and those of Dr. Syed in her testimony and records.

In Dr. Belizaire's own testimony, she confirms that she identified a large cystic mass adhered "to the left pelvic side wall," and that she mobilized and "excised the cyst entirely" without difficulty, using scissors and cauterization. She testified this cyst was not attached to the ovary and not within the retroperitoneum, but that she "saw the top of the left ovary" and exposed both ovaries during her portion of the surgery.

Dr. Syed testified that when Dr. Belizaire removed this cystic mass – shortly before Dr. Syed took over the bilateral salpingo-oophorectomy procedure – her impression was "that was the cyst I was supposed to remove" and that she was certain "this thing was coming from the location of the ovary." She also noted in her testimony that the pathology report on that cyst described it as "left adnexa cyst," referring to the area the specimen was collected from. Dr. Syed further testified that she observed Dr. Belizaire "in the retroperitoneal space," because

10

she mobilized the patient's colon.

The movants' expert Dr. Collins makes no mention of the cystic mass removal in his affirmation and does not provide sufficient detail as to how this area was distinct from the retroperitoneum. With respect to the mobilization of the colon, the expert's opinion that Dr. Syed was simply "incorrect" and that Dr. Belizaire did not *necessarily* need to enter the retroperitoneum to mobilize the colon is conclusory and speculative. Dr. Collins opines that "the bowel *can* be mobilized without entering the retroperitoneal space" and then opines generally that there "would be no reason" for a surgeon in Dr. Belizaire's position to enter that space due to the "unnecessary risk to those structures in the retroperitoneum." These views are based on general practice and do not eliminate the issue of fact as to whether Dr. Belizaire did enter that space during her portion of the surgery.

The expert's opinions on proximate causation are also speculative and unsupported by the record. He relies on the same argument that Dr. Belizaire was not operating in the retroperitoneum at any time and therefore could not have caused the injury, but the expert never addresses Dr. Belizaire's removal of the adnexal cyst, and as discussed above, he also relies on conclusory statements and assumptions with respect to mobilizing the colon.

The expert also offers contradictory opinions on methylene blue, stating that "[i]f there is an injury to the ureters, the dye *may* leak into the abdomen" and "the absence of extravasation *cannot definitively* rule out an intraoperative ureteral injury," but also stating the lack of extravasation confirmed the ureter was intact. He opines that there are "various ways in which the ureter can become injured" intraoperatively in the absence of malpractice, and he states that thermal injury or blood flow disruption would be undetectable even with additional testing, but he does not point to specific evidence that was how the injury occurred in this case.

For these reasons, the Court finds that Dr. Belizaire's expert submissions are speculative, unsupported by the record, and insufficient to make a prima facie showing of entitlement to summary judgment, regardless of the sufficiency of the opposing papers.

Notwithstanding the above, Plaintiff submits an expert affirmation in opposition to the motion from a licensed physician (name of expert redacted), board certified in surgery. The expert affirms that in addition to their board certification in general surgery, they are experienced and familiar with lysing extensive adhesions in

11

[* 11]

the context of a bilateral salpingo-oophorectomy. The Court finds the surgical expert has laid a proper foundation to opine on the issues in this case including the anatomical arguments raised by the movants' expert.

Plaintiffs' expert opines that Dr. Belizaire departed from the standard of care in failing to "appropriately identify and protect the patient's anatomy" and isolate the ureter during the lysis of adhesions. The expert counters the opinion of the movants' expert that Dr. Belizaire did not encounter or "enter the area where the ureter is located," and specifically that she did not enter the retroperitoneum.

Noting the testimony of Dr. Syed and Dr. Belizaire, specifically with regard to Dr. Belizaire mobilizing and excising the left cystic structure, Plaintiffs' expert opines that Dr. Belizaire was in fact "lysing adhesions in the region of the distal left ureter" during her portion of the surgery.

Plaintiffs' expert opines that the operative and pathology reports also demonstrate that Dr. Belizaire was working in the region where she would have encountered the distal ureter. According to Plaintiffs' expert, the left ureter is directly behind the ovary and fallopian tube, and the fact that Dr. Belizaire excised the "left adnexa cyst" specimen is evidence she did enter this region. Plaintiffs' expert opines that based on the operative report and testimony that she did identify and mobilize this cyst, Dr. Belizaire was in the retroperitoneum and pelvic area "in the vicinity of the distal ureter." The expert opines that for any general surgeon, the standard of care when operating in this region with scissors and cautery equipment is to isolate and protect the ureter. Thus, they opine that Dr. Belizaire deviated from this standard by failing to take proper care to avoid damaging the left ureter.

Plaintiffs' expert also counters Dr. Collins' opinion on proximate causation. Plaintiffs' expert states that "ureter laceration is not a known and accepted risk" of this type of surgery, and such injury only occurs from negligence. The expert opines that Dr. Belizaire's alleged departure from the standard of care in failing to use proper caution to avoid the ureter was a direct and proximate cause of the ureter being transected during the July 22, 2019 surgery, and the resulting injuries including prolonged hospitalization and the need for additional surgery.

Plaintiffs' expert specifically addresses the use of methylene blue, which the movants' expert conceded could not rule out an intraoperative injury. Plaintiffs' expert opines that a left ureter injury – even one caused by

12

laceration – could only be definitively ruled out by a cystoscopy, as the blue dye may be ineffective due to timing or excretion into a pocket of adhesions. Therefore, the expert counters the movants' expert opinion that that the dye confirmed "the integrity of the left ureter was intact." The expert opines based on the medical record that the ureter was "completely transected" during the procedure, not degraded by blood flow or thermal injury as speculated by the movants' expert.

Even if Dr. Belizaire's expert had met their prima facie burden, Plaintiffs' expert has sufficiently raised issues of fact to defeat the motion. The expert addresses Dr. Collins's arguments and counters them in detail, citing to the medical record, operative report, and the testimony of both physicians. The expert raises clear issues of fact, specifically whether Dr. Belizaire was required by the standard of care to identify and protect the ureters during her portion of the surgery, and whether her deviation from the standard of care proximately caused an intraoperative transection of the left distal ureter.

Contrary to the movants' argument in reply, there is a clear issue of fact regarding whether Dr. Belizaire was in the anatomical region of the distal ureters while she was lysing adhesions and removed the left cystic mass from the pelvic wall. Even if Dr. Collins had made a prima facie showing on this contention, Plaintiffs' expert has sufficiently established the qualifications to opine on this issue and rendered a conflicting opinion grounded in the evidence. As there are issues of fact and credibility requiring resolution by a jury, summary judgment for Dr. Belizaire must be denied.

To the extent that Brooklyn Hospital Center moves for summary judgment on any claims *except* related to the treatment of Dr. Belizaire, that branch of the motion is granted. Any vicarious liability for co-defendants Dr. Amberg, Dr. Levy, and Dr. Kramer is extinguished as "there is no primary liability upon which such a claim of vicarious liability might rest" (*Longhi v Lewit,* 187 AD3d 873, 878 [2d Dept 2020]).

It is also undisputed that co-defendant Dr. Syed was not an employee of Brooklyn Hospital Center, but a private physician of the patient's choosing, and therefore the hospital is not vicariously liable for Dr. Syed (*see Ciceron v Gulmatico,* 220 AD3d 736, 738 [2d Dept 2023]; *Muslim v Horizon Med. Group, P.C.,* 118 AD3d 681, 630 [2d Dept 2014]). The only remaining claims against Brooklyn Hospital Center stem from vicarious liability

13

[* 13]

for Dr. Belizaire, and not the negligence of any other physicians, residents, or staff.

On the negligent hiring/retention/supervision claim, Brooklyn Hospital Center argues that any claims for negligent hiring/retention/supervision against them should be dismissed as a matter of law. "Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision or training," except where the plaintiff alleges "gross negligence in the hiring or retention of the employee" (*Talavera v Arbit,* 18 AD3d 738 [2d Dept 2005]). It is undisputed that Plaintiffs' claims against Brooklyn Hospital Center are based in the respondeat superior theory for the acts and omissions of Dr. Belizaire, only.

Plaintiffs do not address or raise any issues of fact as to the negligent hiring/training/supervision claims against Brooklyn Hospital Center, nor raise any argument of liability against Brooklyn Hospital Center employees, residents, or staff other than vicarious liability for Dr. Belizaire. Plaintiffs also do not oppose the summary judgment motions as to the informed consent claims against any of the movants. Accordingly, summary judgment is granted on those claims only, and the motion is otherwise denied.

It is hereby:

**ORDERED** that Dr. Syed and Richmond Ob/Gyn Associates, P.C.'s motion (Seq. No. 3) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor, is **granted to the extent** of dismissing Plaintiffs' cause of action for lack of informed consent against them, and the motion is otherwise **denied;** and it is further

**ORDERED** that the branch of Dr. Amberg, Dr. Levy, Dr. Belizaire, Dr. Kramer, and Brooklyn Hospital Center's motion (Seq. No. 4) seeking summary judgment in favor of Dr. Amberg, Dr. Levy, and Dr. Kramer, is **granted without opposition;** and it is further

**ORDERED** that the branch of Dr. Belizaire and Brooklyn Hospital Center's motion (Seq. No. 4) seeking summary judgment in favor of Dr. Belizaire is **granted to the extent** of dismissing Plaintiffs' claim for lack of informed consent against Dr. Belizaire, and the motion is otherwise **denied**; and it is further

14

**ORDERED** that the branch of Brooklyn Hospital Center's motion (Seq. No. 4) seeking summary judgment in favor of Brooklyn Hospital Center, is **granted to the extent** of dismissing any claims for negligent hiring/training/supervision against the hospital; and it is further

**ORDERED** that the branch of Brooklyn Hospital Center's motion (Seq. No. 4) seeking summary judgment in favor of Brooklyn Hospital Center, is **denied** as to their vicarious liability on behalf of Dr. Belizaire.

**ORDERED** that the caption is amended as follows:

------------------------------------------------------------------------X
ANA HERNANDEZ and JUSTINO HERNANDEZ,

      Plaintiffs,

  -against-

RADHA SYED, M.D., GARDEN OF HEALTH a/k/a EL
JARDIN DE LA SALUD, RICHMOND OB/GYN
ASSOCIATES, P.C., RITHA BELIZAIRE, M.D. and THE
BROOKLYN HOSPITAL CENTER,

      Defendants.
------------------------------------------------------------------------X

The Clerk shall enter judgment in favor of ALEX MATTHEW AMBERG, M.D., DANILLE LEVY, M.D., and PHILIP KRAMER, M.D.

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

15